NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-12486

COMMONWEALTH  vs.  CAYLA S. PLASSE.

Franklin.     September 6, 2018. - January 10, 2019.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher, & Kafker, JJ.

Practice, Criminal, Sentence, Probation, Revocation of probation, Judicial discretion.

Complaint received and sworn to in the Orange Division of the District Court Department on September 26, 2013.

A motion for release from unlawful restraint and for a new sentencing hearing, filed on March 31, 2017, was heard by David S. Ross, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

Edward Gauthier for the defendant.
Thomas H. Townsend, Assistant District Attorney, for the Commonwealth.
Lisa Newman-Polk, for Committee for Public Counsel Services & others, amici curiae, submitted a brief.

LENK, J.  "Few, perhaps no, judicial responsibilities are more difficult than sentencing.  The task is usually undertaken

by trial judges who seek with diligence and professionalism to take account of the human existence of the offender and the just demands of a wronged society."  Commonwealth v. Rodriguez, 461 Mass. 256, 259 (2012), quoting Graham v. Florida, 560 U.S. 48, 77 (2010).  While the exercise of this "quintessential judicial power" is never an easy task, Rodriguez, supra at 266, it is made all the more difficult when the crime and subsequent noncompliance with probation are related to the effects of drug addiction.

The issue here arises from the judge's imposition of a sentence of incarceration following the defendant's repeated addiction-related violations of probation over a period of several years.  The defendant requested the sentence in order to participate in a secure residential drug treatment program, but, after several months of serving her sentence, sought release from the alleged unlawful restraint, as well as a new sentencing hearing.  She now appeals from the denial of the motion she filed pursuant to Mass. R. Crim. P. 30, as appearing in 435 Mass. 1501 (2001); the defendant contends that the judge erred in considering the rehabilitation program when setting the length of her sentence of incarceration.  We conclude that in

the circumstances presented, the judge did not abuse his discretion.[1]

1. Background. a. Initial disposition. In August 2013, the defendant stole items valued at more than $250 from a chain department store. A complaint issued approximately one month later charging her with larceny, in violation of G. L. c. 266, § 30 (1), and with using disguises to obstruct execution of the law, in violation of G. L. c. 268, § 34. At a plea colloquy, the defendant admitted to sufficient facts to warrant a finding of guilt with respect to the larceny charge.[2] The judge then continued the matter without a finding for one year, from December 2013 through December 2014. Upon the successful completion of the one-year period of probation, the charge was to be dismissed.[3]

_____

[1] We acknowledge the amicus brief of the Committee for Public Counsel Services; the American Academy of Addiction Psychiatry; the American Civil Liberties Union of Massachusetts, Inc.; the Association for Behavioral Healthcare; the Center for Prisoner Health and Human Rights; the Center for Public Representation; the Grayken Center for Addiction Medicine at Boston Medical Center; the Massachusetts Association of Criminal Defense Lawyers; the Massachusetts Society of Addiction Medicine; and Prisoners' Legal Services.

[2] The prosecutor dismissed the charge of obstruction.

[3] In a disposition of a continuance without a finding, a defendant admits to sufficient facts that the offense occurred as charged, but the judge does not enter a finding of guilt. Instead, the matter is continued to a specific date, whereupon it is dismissed if the imposed conditions have been met. See

At that time, the defendant was twenty-one years old. The continuance was conditioned on the successful completion of two programs: "Stoplift," an Internet-based program designed to prevent shoplifting recidivism, and a program involving intensive supervision by the probation service known as level three "community corrections." The latter includes office visits, group meetings, and drug and alcohol screenings.

b. Probationary violations. We summarize the course of the probationary violations over the next three years as follows.

In January 2014, one month after the initial continuance was imposed, the probation service filed its first notice of violation.[4] The notice related to the defendant's noncompliance

---

G. L. c. 278, § 18. If the defendant is found to have violated the conditions imposed in an order of probation, the judge may convert the continuance to a guilty plea and sentence the defendant accordingly. Id. See Commonwealth v. Sebastian S., 444 Mass. 306, 315 (2005).

[4] Where there is reason to believe that a defendant has violated a condition of probation, a probation officer may initiate probation violation proceedings by filing a "Notice of Probation Violation and Hearing." See Rule 4(b) of the District/Municipal Court Rules for Probation Violation Proceedings, Massachusetts Rules of Court, at 644 (Thomson Reuters 2018). At a preliminary detention hearing, a judge determines whether probable cause exists to believe that the probationer has violated a condition of the probation order, and, if so, whether the probationer should be held in custody pending a final violation hearing. See Rule 5 of the District/Municipal Court Rules for Probation Violation Proceedings, supra at 645-646. At a final violation hearing,

with the requirements of the community corrections program and her failure to pay court-ordered fees. A second notice of violation was filed in March 2014, following a drug screening in which the defendant tested positive for the presence of tetrahydrocannabinol (THC). At a hearing concerning both of these violations, the defendant, represented by counsel, stipulated to the underlying facts. The defendant was found in violation of the terms of probation and reprobated, and the continuance -- as it was initially imposed -- remained in effect.

In April 2014, the defendant reported to the probation service and her drug screen returned a positive result for the presence of THC and cocaine. Approximately one week later, the defendant again tested positive for the presence of THC and cocaine, as well as for amphetamine and morphine. The probation service filed its third and fourth notices of violation. Counsel was appointed, and the defendant was held pending a final violation hearing. At the final violation hearing in May 2014, the judge again found the defendant in violation of the terms of probation. This time, he modified the terms of

---

the judge determines whether, by a preponderance of the evidence, the defendant violated the terms of probation and, if so, what the appropriate disposition should be. See Rule 8 of the District/Municipal Court Rules for Probation Violation Proceedings, supra at 653.

probation, requiring a substance abuse evaluation, a mental health evaluation, that the defendant remain drug and alcohol free,[5] and that she participate in a residential treatment program. The judge also extended the probationary period until May 2015. The defendant subsequently entered into the specified drug treatment program.

In October 2014, a warrant issued for the defendant's arrest when the probation officer became aware that she had left the court-ordered residential treatment program without authorization. The defendant was brought into court, at which time her drug screening results again were positive. She was found in violation, and was reprobated, without any further modification of the length or terms of probation.

In November 2014, another warrant was issued for the defendant's arrest, due to her failure to report to her probation officer on two occasions. The warrant remained outstanding until she came to court one month later, when she tested positive for the presence of cocaine and THC. Following a hearing in December 2014, the judge found the defendant in violation, reprobated her, and amended the conditions of probation for a second time, to require that the defendant

---

[5] The requirement that the defendant remain drug and alcohol free was implicit in the Community Corrections level three program, which includes mandatory drug and alcohol screenings.

complete a different residential drug treatment program. He also extended the defendant's term of probation until December 2015. The defendant was held in custody for several weeks until a bed became available in that program.

In January 2015, the defendant entered the second residential treatment program and remained there for approximately three months before transitioning to a sober living program. She was expelled from the sober living house shortly thereafter, as a result of using drugs. The defendant failed to report to the probation service as required, and another warrant was issued for her arrest.

At a July 2015 hearing, the judge found the defendant in violation of the terms of her probation. He again modified the terms of probation to require the defendant to reside at a third residential drug treatment program. The defendant entered that program, but later was asked to leave because of drug use. A warrant again issued for the defendant's arrest. She ceased contact with her probation officer, and with the court, for the next thirteen months.

The defendant eventually telephoned her mother, who had been actively coordinating with her probation officer in an attempt to locate the defendant throughout the prior year. The defendant reported to her mother that her drug use had spiraled

out of control and that she had "hit rock bottom." In October 2016, police officers located and arrested the defendant.

As of the time of the October 2016 hearing, the defendant had been in violation of the terms of her probation during most of the three years of the repeatedly extended continuance. The probation service requested that the judge vacate the continuance and enter a finding of guilt, revoke the defendant's probation, and sentence her to a term of incarceration of eighteen months. Her probation officer reported that the defendant's family agreed that she was in "great need for treatment," in addition to needing to be held accountable for her crime.

Defense counsel represented that the defendant agreed she was "not a good candidate for probation," and that she needed a more structured environment in which to obtain treatment. Counsel therefore requested that the defendant be sentenced to a term of incarceration of "at least nine months," a period of time that he stated was sufficient for her to be assigned to, and then complete, the structured and intensive treatment program known as "Howard Street."[6]

---

[6] "Howard Street" refers to a secure residential treatment program at a facility in Hampden County run by the sheriff's department. The facility has since moved locations and is now known as the Western Massachusetts Recovery and Wellness Center. It is designed to provide for the custody, care, and treatment of substance abusers.

Noting the defendant's failure to complete several residential treatment programs and his concern that many in her position "don't make it," the judge concluded that the defendant presented one of the rare cases in which all efforts at rehabilitation, other than incarceration, had been unsuccessful. He stated that a sentence of incarceration would be imposed "not to punish [the defendant] but to make sure that she gets through a program and is back out on the street safe and alive." Consequently, the judge revoked the defendant's probation and sentenced her to two years' incarceration in a house of correction for the underlying offense, pursuant to G. L. c. 266, § 30 (1).  In calculating the length of the sentence, the judge noted that the defendant would be credited with two months of "time served," took into account the potential "good time" credits that she could earn toward early release, and considered her eligibility for parole after serving one-half of the sentence.  In doing so, he appeared to have reasoned that the defendant would serve approximately nine to ten months of the two-year sentence, a period of time adequate to complete the program that the defendant had requested.

Months later, represented by new counsel, the defendant sought release from the alleged unlawful restraint, as well as a new sentencing hearing pursuant to Mass. R. Crim. P. 30.  She argued that the judge had erred in considering rehabilitative

programming in determining the appropriate length of incarceration.  The motion was denied.  The defendant appealed, and we transferred the case from the Appeals Court to this court on our own motion.[7]

2.  Discussion.  a.  Standard of review.  We review the denial of a motion under Mass. R. Crim. P. 30 for abuse of discretion or error of law.  See Commonwealth v. Perez, 477 Mass. 677, 681-682 (2017).  See also Commonwealth v. Perez, 480 Mass. 562, 567 (2018).  "Under that standard, the issue is whether the judge's decision resulted from '"a clear error of judgment in weighing" the factors relevant to the decision . . . such that the decision falls outside the range of reasonable alternatives.'"  Perez, supra at 682, quoting L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).[8]

b.  Probation revocation.  When a sentencing judge, after sufficient facts have been admitted, terminates a continuance,

_____

[7] The defendant is no longer incarcerated, rendering moot her challenge to the order denying the motion for a new sentence and release from unlawful confinement.  See Acting Supt. of Bournewood Hosp. v. Baker, 431 Mass. 101, 103 (2000). Nonetheless, we decide the case because it raises important issues concerning proper sentencing considerations that are likely to recur in similar circumstances, but to evade review. See id.

[8] To the extent that the defendant also moved for a new sentencing hearing pursuant to Mass. R. Crim. P. 30 (b), the decision to allow such a motion is similarly left "to the sound discretion of the judge."  See Commonwealth v. Scott, 467 Mass. 336, 344 (2014).

revokes probation, and enters a guilty finding, the judge is permitted to impose "a sentence or other disposition as provided by law."  See Rule 9(b) of the District/Municipal Court Rules for Probation Violation Proceedings, Massachusetts Rules of Court, at 655 (Thomson Reuters 2018) (noting dispositional options available to judge following violation of conditions associated with continuance).  See also Commonwealth v. Villalobos, 437 Mass. 797, 801 (2002) (when defendant admits to sufficient facts for purposes of continuance, violation "may lead to . . . an immediate conviction and sentence . . . during the continuance period").  When a violation occurs and a defendant's probation is revoked because the defendant has "abused the opportunity" offered to avoid incarceration in the first instance, the defendant is imprisoned not for the violations that prompted revocation of probation, but, rather, "the defendant is essentially being sentenced anew on his [or her] underlying conviction" (citations omitted).  See Commonwealth v. Eldred, 480 Mass. 90, 97, 102 (2018).

Here, the defendant does not challenge that a term of incarceration appropriately was imposed, or that the sentence fell within the legal limits prescribed by the statute pursuant to which she had been convicted.  Rather, her challenge is to the factors considered by the judge in fashioning that sentence. She contends that, in setting the length of her sentence, the

judge abused his discretion when he took into account the time requirements of a rehabilitative program she wished to enter and had urged upon him. We discern no abuse of discretion in these limited circumstances.

c. Sentencing considerations. We have long held that "[a] judge has considerable latitude within the framework of the applicable statute to determine the appropriate individualized sentence." Commonwealth v. Goodwin, 414 Mass. 88, 92 (1993), citing Commonwealth v. Celeste, 358 Mass. 307, 309-310 (1970). "That sentence should reflect the judge's careful assessment of several goals: punishment, deterrence, protection of the public, and rehabilitation." Goodwin, supra. In determining the extent to which a particular sentence will facilitate these goals, a sentencing judge is tasked with weighing "various, often competing, considerations." Rodriguez, 461 Mass. at 259. Those considerations include, among others, the circumstances of the crime, the role of the defendant in the crime, the need for deterrence, the defendant's risk of recidivism, and the extent to which a particular sentence will increase or diminish the risk of recidivism. See id., and cases cited. Thus, in order "to impose a just sentence, a judge requires not only sound judgment" but also information concerning, among other factors, the defendant's "criminal and personal history." See id.

In fashioning an appropriate and individualized sentence that takes account of a defendant's personal history, a judge has discretion to weigh "many factors which would not be relevant at trial," including the defendant's behavior, background, family life, character, history, and employment. See Commonwealth v. Mills, 436 Mass. 387, 399-400 (2002); Goodwin, 414 Mass. at 92, citing Celeste, 358 Mass. at 310. See also Commonwealth v. White, 436 Mass. 340, 343 (2002) (judge may consider such factors in assessing defendant's "propensity for rehabilitation"). Taking into account a defendant's substance abuse issues may be part of this calculus. See Commonwealth v. Healy, 452 Mass. 510, 515 (2008) (judge had discretion to consider defendant's alcohol use problem during sentencing). See also Sentencing Commission, Advisory Sentencing Guidelines, at 27 (Nov. 2017) ("[a] just system of punishment" is one that "provides the defendant with treatment for mental, emotional, psychological, or physical conditions, including substance abuse, as needed"). In circumstances in which a defendant specifically requests a judge's consideration of his or her substance abuse issues and related need to complete a rehabilitative program while incarcerated, the judge may take these factors into account. See Lannon v. Commonwealth, 379 Mass. 786, 792-793 (1980) (defendant cannot challenge on appeal proposal that own counsel offered).

A judge's discretion to consider external factors, however, is not unlimited. Indeed, "[i]t is of paramount importance that justice be administered impartially, based solely on relevant criteria for sentencing." See Mills, 436 Mass. at 401. For example, a sentencing judge may not punish a defendant for an untried criminal offense, Commonwealth v. Souza, 390 Mass. 813, 817 (1984); rely on inaccurate or misleading information in sentencing, Commonwealth v. LeBlanc, 370 Mass. 217, 221 (1976); or punish a defendant to direct a personal message of deterrence to a particular community, Commonwealth v. Howard, 42 Mass. App. Ct. 322, 327-328 (1997).

The judge here expressed no personal or private beliefs regarding the defendant's history that appeared to "interfere with his judicial role and transform it from that of impartial arbiter." Cf. Mills, 436 Mass. at 401. Nor did he make remarks indicating that he was punishing the defendant for conduct "other than that for which the defendant [stood] convicted" (citation omitted). Cf. White, 436 Mass. at 341-342. As part of his sentencing considerations, the judge took into account the defendant's request to participate in a particular rehabilitation program while incarcerated, as well as the actual amount of time that she would be required to serve in order to

complete that program.[9]  We discern no abuse of discretion in

considering those programmatic time constraints, among various

other factors, when fashioning her sentence in the circumstances

here.[10]

Indeed, after the defendant's failure to make use of the

opportunity to avoid incarceration while on probation, the judge

sought to maintain an appropriate balance between the

defendant's individualized needs and those of the community in

which she resides.  See Eldred, 480 Mass. at 103.  In so doing,

he considered permissible factors, such as the defendant's

history, behavior, and propensity for rehabilitation while on

probation.  See, e.g., White, 436 Mass. at 343; Commonwealth v.

Doucette, 81 Mass. App. Ct. 740, 744 (2012).[11]  Because nothing

---

[9] The judge gave no indication that he otherwise would have imposed a shorter sentence if it were not for the programmatic time constraints.

[10] The judge, of course, could only recommend that the defendant be allowed to participate in the Howard Street program; the power and responsibility of implementing a sentence reside with the sheriff's department.  See Commonwealth v. Cole, 468 Mass. 294, 302 (2014).  Similarly, parole eligibility and good time credits are not within a judge's purview.  It appears that, given the judge's apparent familiarity with the area, the available programs, and the sheriff's practices, there was likely reason for those involved to think his recommendation as to the Howard Street program would carry significant weight.

[11] As our cases have long made clear, rehabilitation remains an important interest served by sentencing.  See, e.g., Commonwealth v. White, 436 Mass. 340, 343 (2002); Commonwealth v. Coleman, 390 Mass. 797, 805 (1984).

in our common law precludes a sentencing judge from considering a defendant's amenability to rehabilitative programming in imposing a sentence of incarceration expressly permitted by statute, we cannot conclude that the judge exhibited a "clear error of judgment" such that his decision fell "outside the range of reasonable alternatives" here (citation omitted).  See Perez, 477 Mass. at 681-682.

That being said, we emphasize that, while we discern no abuse of discretion in this case, it is because of the unusual context in which the challenged sentencing decision was made.  The approach taken here, over a three-year period, consistently embodied the recognition that incarceration is not the preferred means of achieving rehabilitation, at least for those whose minor, nonviolent crimes are related to the effects of substance abuse.  See, e.g., Deputy Chief Counsel for the Pub. Defender Div. of the Comm. for Pub. Counsel Servs. v. Acting First Justice of the Lowell Div. of the Dist. Court Dep't, 477 Mass. 178, 179 (2017) (in drug courts, judge "impose[s] probation to accommodate a need for treatment rather than a sentence of incarceration"); Department of Correction, FY16 Gap Analysis Report, at 3 (Oct. 2017) (noting that forty-one per cent of eligible individuals did not complete or participate in drug and alcohol programming in jails and prisons, and thirty-two per cent had no access to such programming).  At the same time, all

else had failed; both the defendant's family and the defendant herself acknowledged the need for incarceration; the defendant requested to participate, while incarcerated, in a particular program; and the judge considered that request, along with other factors, when determining the length of her committed sentence. Had the constellation of circumstances been otherwise, so might the result.[12]

d. Federal approach. Acknowledging that there is no existing jurisprudence in the Commonwealth that precludes a sentencing judge from considering a defendant's need for rehabilitation in imposing a sentence of incarceration, the defendant urges us to adopt the Federal approach. See Tapia v. United States, 564 U.S. 319 (2011). In Tapia, the United States Supreme Court relied upon express language in the Federal Sentencing Reform Act that directs a Federal judge, when sentencing, to recognize that "imprisonment is not an appropriate means of promoting correction and rehabilitation."

---

[12] By way of example, even if an imposed sentence is within the statutory limits and thus legal, we would not be sanguine about sentencing practices for the same underlying crime if, following the substance-abuse-related revocation of probation, the imposed sentence were harsher than it would have been following the revocation of probation due to other causes. Moreover, when determining the length of a committed sentence, a judge's consideration of the time requirements of a rehabilitation program that the defendant has not voluntarily requested, but that the judge mandates, is a practice fraught with peril and generally best avoided.

Id. at 326, citing 18 U.S.C. § 3582(a).  In interpreting this provision, the Court held that, although a Federal judge at sentencing may discuss the opportunities for rehabilitation within prison, the judge may not impose or lengthen a term of incarceration solely to ensure that a defendant completes rehabilitative programming.  See id. at 332.

The defendant does not point to, and we are unaware of, any controlling Massachusetts authority that would prohibit a State trial court judge from considering rehabilitation in imposing a term of incarceration explicitly permitted by the language of the criminal statute pursuant to which she was convicted.  As discussed, in Massachusetts, "it is a rare sentence, whether or not jail is a part of it, that does not in fact involve . . . rehabilitation."  Commonwealth v. Power, 420 Mass. 410, 415 (1995), cert. denied, 516 U.S. 1042 (1996), quoting United States v. Tolla, 781 F.2d 29, 35 (2d Cir. 1986).  Thus, as Tapia concerned the interpretation of a Federal statute for which Massachusetts has no analog, we decline to adopt its approach today.[13]

---

[13] Other State courts similarly have rejected arguments that they adopt the reasoning in Tapia v. United States, 564 U.S. 319 (2011), also on the ground that Tapia relies exclusively on the interpretation of Federal law.  See, e.g., Knox v. State, 122 A.3d 1289 (Del. 2015) (unpublished); State v. Baker, 153 Idaho 692, 699 n.2 (Ct. App. 2012).  But see State v. Jepsen, 907 N.W.2d 495, 510 (Iowa 2018) (Zager, J., dissenting) (citing

3. <u>Conclusion</u>. "Trial court judges, particularly judges in the drug courts, stand on the front lines of the opioid epidemic." See <u>Eldred</u>, 480 Mass. at 99. Here, as in <u>Eldred</u>, the defendant's underlying crime is substance abuse related, the probation violations are substance abuse related, and the relapses associated with those violations may themselves be part of the recovery process. See <u>id</u>. Mindful that judges are to steer carefully between Scylla and Charybdis when sentencing such individuals, and that sentencing decisions are bounded by limits, we are of the view that, given all of the circumstances present here, the judge did not exceed those limits.

The order denying the motion for release from unlawful confinement and for a new sentencing hearing is affirmed.

<u>So ordered</u>.

---

<u>Tapia</u>, in context of double jeopardy challenge, for proposition that imprisonment is inappropriate for rehabilitation as compared to probation).